ATTORNEYS FOR APPELLANT
John P. Daly, Jr.
Matthew M. Golitko
Golitko & Daly PC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
John C. Trimble
Lewis Wagner, LLP
Indianapolis, Indiana

Sonia C. Das
Rocap Musser LLP
Indianapolis, Indiana

In the
Indiana Supreme Court

FILED
Jan 22 2015, 9:42 am
CLERK
of the supreme court,
court of appeals and
tax court

No. 29S02-1405-PL-314

JASON YOUNG,                                        *Appellant (Defendant)*,

v.

HOOD'S GARDENS, INC.,                              *Appellee (Plaintiff)*.

Appeal from the Hamilton Superior Court, No. 29D04-1008-PL-12527
The Honorable J. Richard Campbell, Judge

On Transfer from the Indiana Court of Appeals, No. 29A02-1303-PL-298

**January 22, 2015**

**Dickson, Justice.**

When a person engages a contractor for the performance of work exceeding $1,000 in value but fails to take certain steps to assure that the contractor complies with the Indiana Worker's Compensation Act, that person is secondarily liable to the same extent as the contractor for worker's compensation benefits payable to an employee of the contractor injured in an accident arising out of and in the course of the contracted-for work. This case presents an issue of first impression: whether the predicate $1,000 in value is determined solely by the amount of money paid to the contractor or also includes the value of other consideration received by the contractor

in connection with the services provided. We hold that the $1,000 monetary threshold may include the ascertainable value of ancillary consideration received by the contractor.

In September 2009, Steve Hood, operator of Hood's Gardens, Inc., a wholesale greenhouse (the business), contacted Craig Mead, proprietor of Discount Tree Extraction a/k/a D & E Tree Removal (the contractor), to remove a large tree at the business. The contractor orally quoted a fixed price of $600 for the work, to be paid upon completion. As part of the job, the contractor was to clear away and remove from the premises all of the wood and debris. The business permitted the contractor to keep the wood, which the contractor intended to sell as firewood. To complete the work, the contractor hired the plaintiff, a tree climber-cutter, to take down and remove the trunk. While working, the plaintiff was severely injured and rendered a paraplegic. As a result of the work, the contractor received the wood from the removed tree, and the business paid the contractor $600.

The present litigation arose as a declaratory judgment action brought by the business seeking to establish that it had no secondary liability because—under its view—the value of the work by the contractor was less than $1,000. Following various procedural occurrences,[1] the trial court granted summary judgment in favor of the business. The trial court also struck a portion of the plaintiff's affidavit containing his opinion that the value of the wood exceeded $400 on grounds that the plaintiff did not qualify as an expert and there was nothing about the plaintiff's knowledge and background that would make his opinion admissible as a lay observer. The plaintiff challenged both issues on appeal, and the Court of Appeals affirmed. Young v. Hood's Gardens, Inc., 2 N.E.3d 724 (Ind. Ct. App. 2013). We granted transfer and now address whether the "value" that triggers secondary liability under Indiana Code section 22-3-2-14(b) is limited to the dollar amount paid in cash or may include the value of other property transferred in connection with the performance of services.[2]

---

[1] The contractor did not respond to the business's complaint and suffered default judgment. After the business filed a motion for summary judgment on its complaint, an initial appeal established subject matter jurisdiction, *see* Hood's Gardens, Inc. v. Young, 976 N.E.2d 80, 84 (Ind. Ct. App. 2012), *trans. not sought*.

[2] The plaintiff's appeal also challenges the trial court's grant of the business's motion to strike parts of the plaintiff's affidavit. Because these stricken portions are not relevant to our decision, we decline to address this claim.

2

We review summary judgment *de novo*, applying the same standard as the trial court: summary judgment is appropriate only where "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C); *see* Kroger Co. v. Plonski, 930 N.E.2d 1, 4–5 (Ind. 2010). We consider only those materials properly designated pursuant to Trial Rule 56 and construe all factual inferences and resolve all doubts as to the existence of a material issue in favor of the non-moving party. Plonski, 930 N.E.2d at 5–6. Further, the interpretation of a statute is a legal question that we also review *de novo*. State v. Int'l Bus. Machines Corp., 964 N.E.2d 206, 209 (Ind. 2012).

The Indiana's Worker's Compensation Act, specifically Indiana Code section 22-3-2-14(b), "imposes on a person who hires a contractor without verifying that the contractor carries worker's compensation insurance liability to the same extent as the contractor for the injury or death of any of the contractor's employees," Everett Cash Mut. Ins. Co. v. Taylor, 926 N.E.2d 1008, 1011 (Ind. 2010)—but only if the value of the work exceeds $1,000:

> [A]ny corporation, limited liability company, partnership, or person, *contracting for the performance of any work exceeding one thousand dollars ($1,000) in value* by a contractor subject to the compensation provisions of IC 22-3-2 through IC 22-3-6, without exacting from such contractor a certificate from the worker's compensation board showing that such contractor has complied with section 5 of this chapter, IC 22-3-5-1, and IC 22-3-5-2, shall be liable to the same extent as the contractor for compensation, physician's fees, hospital fees, nurse's charges, and burial expenses on account of the injury or death of any employee of such contractor, due to an accident arising out of and in the course of the performance of the work covered by such contract.

Ind. Code § 22-3-2-14(b) (emphasis added).[3] It is undisputed that the business did not obtain the requisite certificate from the contractor and that the contractor had no worker's compensation insurance.

The parties dispute whether the "value" of the contractor's work exceeds $1,000. On appeal, the plaintiff argues that the value of the contractor's work consists of the total amount of

---

[3] This provision does not apply to "an owner who contracts for the performance of work on the owner's owner occupied residential property" or certain nonprofit corporations. Ind. Code § 22-3-2-14(a)(1).

consideration exchanged by the parties. Although the undisputed contract price for the contractor's work was $600, the plaintiff urges this Court to include the value of the wood received by the contractor based primarily on the testimony of the contractor that the work was priced depending on whether it was permitted to keep the wood and that the value of the wood exceeded $400. The business counters that we should interpret the statute to focus on the contract price only, adding that any additional benefit the contractor might have realized from salvaging the wood is extra-contractual in nature and not considered by the parties at the time the contract was formed and that the value of services is determined by the benefit conferred on the business only.

The first step in statutory interpretation is to determine whether the legislature has spoken clearly and unambiguously on the point in question. Sees v. Bank One, Indiana, N.A., 839 N.E.2d 154, 157 (Ind. 2005). "When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense." *Id.* But if a statute is susceptible to more than one interpretation, it is deemed ambiguous and thus open to judicial construction. *Id.* Where a statute is ambiguous, our primary goal is to determine and give effect to the intent of the legislature. *Id.* We find that Section 14(b) is ambiguous regarding the scope of "value."

"To effectuate legislative intent, we read the sections of an act together in order that no part is rendered meaningless if it can be harmonized with the remainder of the statute. We also examine the statute as a whole." City of Carmel v. Steele, 865 N.E.2d 612, 618 (Ind. 2007) (internal citation omitted). As a general rule, we liberally construe the Act to effectuate its humane purposes and resolve any doubts in the application of terms in favor of the employee. Christopher R. Brown, D.D.S., Inc. v. Decatur Cnty. Mem'l Hosp., 892 N.E.2d 642, 649 (Ind. 2008). When the intent of the legislature to limit the Act is "very obvious," however, we do not extend the Act's applicability beyond its provisions:

> The [Act] is a humane enactment designed and intended for the protection of workmen who come within its provisions, which are and ought to be liberally construed and applied, so as to extend that protection to the ultimate good of the greatest possible number of our workers; but the extent and limitation of its applicability also are fixed by those provisions and we cannot, by judicial pronouncement, enlarge these beyond the very obvious intent of the Legislature . . . .

*Id.* (quoting McGill Mfg. Co. v. Dodd, 116 Ind. App. 66, 70–71, 59 N.E.2d 899, 901 (1945),

4

*trans. denied*).  Applying the foregoing principles of statutory interpretation and construing "value" to harmonize with the remainder of Section 14(b) and the Act, we hold that "value" (in the phrase "work exceeding one thousand dollars in value") includes both direct monetary payment as well as any ancillary consideration in goods or services received by the employer for the work.

Section 14(b) evinces the legislative intent to enhance the availability of worker's compensation benefits for workers injured during their employment with employers not providing such coverage.  Section 14(b) incentivizes persons who engage other employers to seek those who can pay worker's compensation benefits to injured workers.  Failure to obtain a certificate showing that an employer is able to provide worker's compensation by insurance or by the employer's own financial ability to pay benefits exposes the person engaging the employer to full liability for worker's compensation benefits for any of the employer's workers injured in the course of the work.  This legislative objective is best served by interpreting Section 14(b) to trigger secondary liability for worker's compensation benefits at the lowest threshold, that is by permitting the $1,000 trigger to be satisfied by both direct monetary payment as well as any ancillary consideration received by the employer for the work.

We acknowledge that Section 14(b) also operates to limit the imposition of secondary worker's compensation liability on those utilizing employers for small jobs, that is, those where the work does not exceed $1,000 in value.  For this distinction to be meaningful and to enable a person engaging an employer to ascertain whether or not to obtain the worker's compensation certificate from the employer, the business urges that the $1,000 trigger value be determined by the monetary contract price only, excluding any ancillary consideration provided to the employer.  It argues that, by imposing secondary liability based upon unclear and possibly disputable claims of ancillary value, the requirement of certificates will become so widespread as to undermine the Act's objective of permitting small jobs (those under $1,000 in value) to be engaged without requiring a worker's compensation certificate.

"Value" is commonly understood to encompass more than mere contract price.  When examining statutes, we "give common and ordinary meaning to the words employed."  Robinson v.

5

Wroblewski, 704 N.E.2d 467, 474 (Ind. 1998). One common usage dictionary defines "value" primarily as "the amount *of a commodity, service, or medium of exchange* that is the equivalent of something else." *Webster's Third New International Dictionary* 2530 (2002) (emphasis added). Another first defines "value" as "[a]n amount considered to be a suitable equivalent for something else; a fair price or return for goods or services." *The American Heritage Dictionary* 1336 (1985). Considering the plain meaning of the "value" received "for the performance of any work," Ind. Code § 22-3-2-14(b), we find that "value" is intended to convey both direct monetary payment as well as any ancillary consideration received.

To prevail on its motion for summary judgment, the business must establish that the tree removal work for which it hired the contractor had a value of $1,000 or less and that this fact was free of factual dispute. Under the applicable statute, the value of this work is to be determined by considering both the monetary payment and ancillary consideration received by the contractor, namely the $600 contract price and the value of the wood received. As the moving party, the business failed to designate evidence establishing that the undisputed value of the ancillary consideration (the wood received) plus the $600 monetary payment did not exceed $1,000. Furthermore, the plaintiff designated testimony by the contractor that the value of the wood received was more than the $600 received. The business was not entitled to summary judgment.

## Conclusion

We conclude that the "value" attributable to the performance of work that triggers secondary liability under Indiana Code section 22-3-2-14(b) includes both direct monetary payment as well as any ancillary consideration received for the work. Finding a question of fact as to the value of the wood received by the contractor Discount Tree Extraction in connection with the performance of its work, we reverse the grant of summary judgment to the business, Hood's Gardens, and remand for further proceedings.

Rush, C.J., and Rucker, David, and Massa, JJ., concur.