ATTORNEYS FOR APPELLANT
Ryan O. Farner
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Rick D. Meils
John W. Mervilde
Indianapolis, Indiana

# In the
# Indiana Supreme Court

FILED
Mar 13 2014, 3:38 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 49S02-1303-PL-221

HOWARD JUSTICE,

*Appellant (Plaintiff below),*

v.

AMERICAN FAMILY MUTUAL INSURANCE
COMPANY,

*Appellee (Defendant below).*

Appeal from the Marion Superior Court, No. 49D05-1001-PL-1701
The Honorable Robyn L. Moberly, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1112-PL-1078

**March 13, 2014**

**Massa, Justice.**

This case raises a question of contract interpretation: in an insurance policy, does the phrase "limits of liability of this coverage" refer to the policy limit or to the insured's total damages? We believe it is the former, but because this particular set-off would reduce the policy limit below the statutory minimum, we reverse the trial court.

**Facts and Procedural History**

Kathleen Wagner, an underinsured motorist, collided with an IndyGo city bus driven by Howard Justice. To compensate him for the damages he sustained as a result of the accident, Justice received $77,469.56 in workers' compensation from IndyGo's insurer, GAB Robbins. That workers' compensation award comprised $51,829.81 paid to Justice's medical providers, $18,939.75 for his lost wages and temporary disability, and $6,700 for his permanent partial impairment. Pursuant to those payments, GAB Robbins asserted a lien in the amount of $77,469.56 against Justice's bodily injury claim. Justice settled this lien for $5,511.06, bringing his net workers' compensation to $71,958.50. Justice also received $25,000 from Wagner's insurer, bringing his total recovery to $96,958.50.

At the time of the accident, Justice carried an underinsured motorist policy issued by American Family Mutual Insurance Company that provided coverage up to $50,000 per person and $100,000 per accident. The underinsured motorist endorsement provided:

> We will pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle. The bodily injury must be sustained by an insured person and must be caused by accident and arise out of the use of the underinsured motor vehicle.
>
> . . .
>
> EXCLUSIONS
>
> . . .

Underinsured Motorists Coverage shall not apply to the benefit of any insurer or self-insurer under any workers' compensation or disability benefits law or any similar law.

LIMITS OF LIABILITY

The limits of liability of this coverage as shown in the declarations apply, subject to the following:

1.      The limit for each person is the maximum for all damages sustained by all persons as the result of bodily injury to one person in any one accident.

2.      Subject to the limit for each person, the limit for each accident is the maximum for bodily injury sustained by two or more persons in any one accident.

We will pay no more than these maximums no matter how many vehicles are described in the declarations, insured persons, claims, claimants or policies or vehicles are involved in the accident.

The *limits of liability of this coverage* will be reduced by:

1.      *A payment made or amount payable by or on behalf of any person or organization which may be legally liable*, or under any collectible auto liability insurance, for loss caused by an accident with an underinsured motor vehicle.

2.      A payment under the Liability coverage of this policy.

3.      *A payment made or amount payable because of bodily injury under any workers' compensation or disability benefits law* or any similar law.

Appellee's App. at 26 (emphasis added).


Justice submitted an underinsured motorist claim to American Family, which denied coverage. Justice subsequently sued American Family for breach of contract, arguing he was entitled, under the terms of the policy, to $25,000—the difference between Justice's underinsured motorist policy limit of $50,000 and the $25,000 he received from Wagner's insurer. American Family moved for summary judgment, arguing Justice was not entitled to recover under the policy because the $71,958.50 he received in workers' compensation benefits

3

operated as a "setoff" against the $50,000 policy limit, thus reducing American Family's liability to zero. After a hearing, the trial court granted American Family's motion.

Justice appealed, arguing: (1) the setoff should not apply at all because his policy expressly excluded coverage of injuries eligible for workers' compensation benefits; (2) even if the setoff did apply, the plain language of the policy required it to apply against his total damages, not the policy limit; and (3) the policy language was ambiguous and should be construed in favor of the insured. A unanimous panel of our Court of Appeals agreed with Justice's second argument and reversed. Justice v. Am. Family Mut. Ins. Co., 971 N.E.2d 1236, 1240 (Ind. Ct. App. 2012) (citing Beam v. Wausau Ins. Co., 765 N.E.2d 524, 533 (Ind. 2002)).

We granted transfer, thereby vacating the opinion below. Ind. Appellate Rule 58(A); Justice v. Am. Family Mut. Ins. Co., 985 N.E.2d 338 (Ind. 2013) (table).

## Standard of Review

Where, as here, the relevant facts are not in dispute, we review the trial court's grant of summary judgment *de novo*. Woodruff v. Ind. Family & Soc. Servs. Admin., 964 N.E.2d 784, 790 (Ind. 2012). Summary judgment is appropriate only where the moving party demonstrates there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); see also Travelers Indem. Co. of Am. v. Jarrells, 927 N.E.2d 374, 376 (Ind. 2010). If he makes that showing, the burden shifts to the non-moving party to demonstrate the existence of a genuine issue of material fact. Reed v. Reid, 980 N.E.2d 277, 285 (Ind. 2012). Like the trial court, we construe all evidence and resolve all doubts in favor of the non-moving party, Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co., 983 N.E.2d 574, 577 (Ind. 2013), so as not improperly to deny him his day in court. Miller v. Dobbs, 991 N.E.2d 562, 564 (Ind. 2013).

4

Insurance contracts "are governed by the same rules of construction as other contracts." Colonial Penn Ins. Co. v. Guzorek, 690 N.E.2d 664, 667 (Ind. 1997). The interpretation of an insurance contract is a question of law, and we address it *de novo*. Dunn v. Meridian Mut. Ins. Co., 836 N.E.2d 249, 251 (Ind. 2005). Similarly, "the interpretation of a statute is a question of law," and we consider it *de novo*. State v. Int'l Bus. Machs. Corp., 964 N.E.2d 206, 209 (Ind. 2012).

### A. The Workers' Compensation Exclusion Clause Does Not Void the Setoff Provision.

Justice first argues the workers' compensation setoff provision cannot apply to reduce benefits payable under his underinsured motorist policy because the policy expressly excludes coverage of injuries eligible for workers' compensation. In essence, Justice claims American Family voided the workers' compensation setoff provision by excluding payments from applying to the benefit of a workers' compensation insurer: "Underinsured Motorists Coverage shall not apply to the benefit of any insurer or self-insurer under any workers' compensation or disability benefits law or any similar law." Appellee's App. at 26.

Justice cites Walkup v. Wabash, 702 N.E.2d 713 (Ind. 1998) as controlling authority on this point, but that case addressed a different issue than the one before us today. Walkup did involve a similar accident; David Walkup was injured in a collision with an uninsured driver. Id. at 713. Walkup's employer, Wabash National Corporation, had general liability coverage through Cincinnati Insurance Company but self-insured its workers' compensation and thus paid $8,599 in workers' compensation benefits directly to Walkup's health care providers. Id. When Walkup sued the uninsured driver, Wabash asserted a lien on his anticipated recovery.[1] Id. at

---

[1] Then and now, Ind. Code § 22-3-2-13 (2007 & Supp. 2013) authorizes such a lien: "If the injured employee . . . shall agree to receive compensation from the employer . . . the employer . . . shall have a

714. Meanwhile, Walkup sought to recover from Cincinnati Insurance under the uninsured motorist coverage provision of Wabash's policy, which contained an exclusion clause stating the coverage did not apply to "[t]he direct or indirect benefit of any insurer o[r] self-insurer under any worker's compensation, disability benefits or similar law." Id. at 715. Walkup ultimately accepted Cincinnati Insurance's offer of $18,000, and Wabash tried to recover from this settlement through its original lien. Id. at 714. We held "that recovery by an injured worker under an uninsured motorist policy that excludes coverage of claims eligible for worker's compensation benefits is not subject to a lien in favor of the worker's employer or its worker's compensation carrier." Id. at 713.

But the question we resolved in Walkup—whether an employer or worker's compensation insurer may assert a lien against funds an injured worker recovers from his uninsured motorist policy—is entirely distinct from the question before us today—whether an uninsured motorist insurer may apply the insured's worker's compensation recovery as a setoff against the policy's liability limit. Walkup, based upon the language of the policy at issue in that case, answered the first question in the negative, but it was silent on the second. Thus, we do not find it instructive here.

**B.  The Policy Language Unambiguously Provides for a Setoff Against the Policy Limit.**

Justice next argues the language in the "LIMITS OF LIABILITY" section of his policy is clear and requires the setoff be applied not against the policy limit but against his total damages. Alternatively, he argues the policy language is ambiguous and must therefore be construed in his

lien upon any settlement award, judgment or fund out of which the employee might be compensated from the third party." See also P.L. 260-1977, § 1, 1977 Ind. Acts 1089 (amending this section).

favor—specifically, such that the setoff applies against his total damages and thus he may recover $25,000 from American Family. We are not convinced.

An insurance policy is a contract like any other, Holiday Hospitality, 983 N.E.2d at 577, but we do apply some specialized rules of construction in recognition of the frequently unequal bargaining power between insurance companies and insureds. Everett Cash Mut. Ins. Co. v. Taylor, 926 N.E.2d 1008, 1012 (Ind. 2010); Wagner v. Yates, 912 N.E.2d 805, 811 (Ind. 2009). One such rule, as Justice correctly points out, requires that where the terms of the policy are ambiguous, courts construe them against the drafting insurer and in favor of the insured. Am. States Ins. Co. v. Kiger, 662 N.E.2d 945, 947 (Ind. 1996). A policy is ambiguous if it is susceptible to two or more reasonable interpretations such that reasonable people would differ as to its meaning, Wagner, 912 N.E.2d at 810, but the mere fact that the parties to the litigation differ as to that meaning is not enough to establish ambiguity. Haag v. Castro, 959 N.E.2d 819, 821–22 (Ind. 2012). And where an insurer crafts a policy using clear and unambiguous language that comports with public objectives expressed in state statute, we apply that plain language, even if the result is to limit the insurer's liability. Am. Econ. Ins. Co. v. Motorists Mut. Ins. Co., 605 N.E.2d 162, 164 (Ind. 1992).

Both parties seem to agree that Beam v. Wausau Ins. Co., 765 N.E.2d 524 (Ind. 2002) controls here, but they differ as to how it should be applied to the facts of this case. In Beam, the eponymous plaintiff truck driver was involved in an accident with a passenger vehicle. Beam sued the other driver, and a jury awarded him $701,371 in damages. Id. at 526–27. The trial court reduced that amount by deducting compensation Beam had already received: (1) $20,000 from the other driver's insurer, (2) $80,000 from Beam's own underinsured motorist policy, (3) $310,206.56 in workers' compensation medical benefits, and (4) $86,945.14 in workers' compensation disability payments. Those deductions reduced Beam's recovery to $204,219.30, payable from Beam's employer's Wausau automobile liability policy, which furnished $1 million in underinsured motorist coverage. Id. at 527. That policy provided, in pertinent part:

A. COVERAGE

1. We will pay the sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or an "underinsured motor vehicle."

. . .

C. EXCLUSIONS

This insurance does not apply to:

. . .

2. The direct or indirect benefit of any insurer or self-insurer under any workers['] compensation, disability benefits or similar law.

. . .

D. LIMIT OF INSURANCE

. . .

2. The Limit of Insurance under this coverage shall be reduced by all sums paid or payable by or for anyone who is legally responsible, including all sums paid under the Coverage Form's LIABILITY COVERAGE.

3. Any amount payable for damages under this coverage shall be reduced by all sums paid or payable under any workers' compensation, disability benefits or similar law.

Id. Beam appealed the deduction, arguing that Section D3 of the policy was ambiguous because it was unclear whether the "amount payable for damages under this coverage" referred to the $1 million policy limit or to his $701,371 damage award; that ambiguity, he contended, should be construed in his favor. Id. at 527–28. We affirmed, concluding the contract unambiguously used the phrase "amount payable for damages" to mean "damages" and thus the trial court's calculations were correct. Id. at 530–31. In so holding, we reasoned "that when the policy attempts to reduce limits, as opposed to damages, it chooses language that does precisely that," as it did in Section D2, which "by reducing the 'limit of insurance,' unmistakably provides that any reduction is to be taken from the policy limit." Id. at 531.

8

We find the policy language at issue in this case analogous to the language of Section D2 in Beam. Here, the American Family policy expressly and unambiguously states that the "*limits of liability* of this coverage will be reduced by . . . [a] payment made or amount payable by or on behalf of any person or organization which may be legally liable [and] . . .[a] payment made or amount payable because of bodily injury under any workers' compensation or disability benefits law." Appellee's App. at 26 (emphasis added). The phrase "limits of liability of this coverage" clearly refers to the $50,000 policy limit, not to Justice's total damages. In application, this means the "limits of liability of this coverage," $50,000, will be reduced by the $25,000 payment Justice received from a "legally liable" entity—Wagner's insurer—and by the $71,958.50 Justice received in workers' compensation and disability benefits. The equation works out as follows: $50,000.00 policy limit – $25,000.00 from Wagner's insurer – $71,958.50 = -$46,958.50. Thus, the policy limit is reduced to zero.

### C. The Set-Off Provision Contravenes Indiana Code § 27-7-5-2.

But our inquiry cannot end there. So long as the policy language comports with our state statutes, it will control, Medley v. Am. Econ. Ins. Co., 654 N.E.2d 313, 315 (Ind. Ct. App. 1995), but if it is inconsistent with those statutes, it is unenforceable. Bush v. State Farm Mut. Auto. Ins. Co., 905 N.E.2d 1003, 1005 (Ind. 2009).

### 1. Indiana's Uninsured/Underinsured Motorist Statute

Our state uninsured/underinsured motorist statute, Ind. Code § 27-7-5-2(a) (2008) provided,[2] in pertinent part: "underinsured motorist coverage must be made available in limits

---

[2] The accident at issue in this case took place on March 27, 2008. Ind. Code § 27-7-5-2 has been amended several times since that date. See P.L. 124-2009, § 1, 2009 Ind. Acts 1127; P.L. 116-2011, § 2, 2011 Ind. Acts 1196; P.L. 125-2012, § 403, 2012 Ind. Acts 2374; P.L. 148-2013, § 1, 2013 Ind. Acts

of not less than fifty thousand dollars ($50,000) . . . Insurers may not sell or provide underinsured motorist coverage in an amount less than fifty thousand dollars ($50,000)."  We have said before that the purpose of uninsured and underinsured motorist insurance coverage is "to promote the recovery of damages for innocent victims of auto accidents with uninsured or underinsured motorists."  United Nat. Ins. Co. v. DePrizio, 705 N.E.2d 455, 459 (Ind. 1999).  Consistent with that purpose, Ind. Code § 27-7-5-2 "is a mandatory, full-recovery, remedial statute."  Lakes v. Grange Mut. Cas. Co., 964 N.E.2d 796, 804 (Ind. 2012) (quoting DePrizio, 705 N.E.2d at 460).

The statute was originally enacted in 1965, see 1965 Ind. Acts. ch. 138, § 1, and it required insurers to offer uninsured motorist coverage in an amount equal to the statutory minimum financial responsibility requirements.  DePrizio, 705 N.E.2d at 460.  In 1982, the General Assembly amended it, see P.L. 166-1982, § 1, 1982 Ind. Acts 1237, to require "that insurers not merely *offer* but *provide* uninsured motorist coverage in an amount equal to the minimum financial responsibility requirements (but not exceeding the bodily injury and property damage limits) of the insured's policy."  DePrizio, 705 N.E.2d at 460 (emphasis in original).  We found that requirement was intended "to put injured parties in the same position they would have been had the tortfeasor complied with our financial responsibility law."  Id. (citing City of Gary v. Allstate Ins. Co., 612 N.E.2d 115, 117 (Ind.1993)).  In 1987, the General Assembly amended the statute again, see P.L. 391-1987(ss), § 1, 1987 Ind. Acts 3558; this amendment further "broadened the scope of the statute by requiring insurers to provide underinsured motorist coverage in addition to uninsured motorist coverage . . .  in limits equal to the limits of liability specified in the bodily injury and property damage provisions of an insured's policy."  DePrizio, 705 N.E.2d at 460 (footnote omitted).  As we have said before, this amendment history unequivocally demonstrates "an intent by our legislature to give insureds the opportunity for full

---

1088.  We quote here the version in effect on the date of the accident, but we note the relevant language has not changed.

compensation for injuries inflicted by financially irresponsible motorists." <u>Lakes</u>, 964 N.E.2d at 803 (quoting <u>DePrizio</u>, 705 N.E.2d at 461).

Since the statute was enacted, insurers have tried to circumvent its minimum coverage requirement in various ways—but always unsuccessfully. In <u>Patton v. Safeco Ins. Co. of Am.</u>, 148 Ind. App. 548, 267 N.E.2d 859 (1971), the policy at issue contained an "excess-escape" clause that purported to limit recovery below the statutory minimum when an uninsured motorist injured an insured while he or she was in another person's vehicle. <u>Id.</u> at 550, 267 N.E.2d at 861. Our Court of Appeals found that clause violated the uninsured motorist statute and was therefore "invalid and unenforceable." <u>Id.</u> at 555, 267 N.E.2d at 864. Similarly, in <u>Cannon v. Am. Underwriters, Inc.</u>, 150 Ind. App. 21, 275 N.E.2d 567 (1971), the policy contained an exclusion purporting to deny recovery if the insured was traveling in an uninsured vehicle. <u>Id.</u> at 22, 275 N.E.2d at 567. Our Court of Appeals found the exclusion conflicted with the uninsured motorist statute "to the extent that it attempts to limit uninsured motorist coverage to accidents growing out of the operation or occupation of the insured vehicle." <u>Id.</u> at 26, 275 N.E.2d at 570. Our federal colleagues have also rejected insurers' attempts to limit coverage below the statutory minimum.[3]

### 2. Instructive Precedent

Here, Justice's policy limit was $50,000, which is the minimum amount the statute allows. But the worker's compensation set-off provision, as the above equations demonstrate,

---

[3] <u>See, e.g.</u>, <u>Vantine v. Aetna Cas. & Sur. Co.</u>, 335 F. Supp. 1296, 1298–99 (N.D. Ind. 1971) (finding exclusion denying coverage when insured occupies an uninsured vehicle impermissibly contravened statutory minimum coverage requirement); <u>Simpson v. State Farm Mut. Auto. Ins. Co.</u>, 318 F. Supp. 1152, 1154–57 (S.D. Ind. 1970) (finding insurer may not limit uninsured motorist coverage through use of other insurance clause or through setoff of payments made under medical coverage).

operates to reduce that policy limit to zero. And so we must today decide whether Ind. Code § 27-7-5-2(a) permits such a reduction.

Although this question is new to us, our Court of Appeals has addressed it on two prior occasions and answered it in the negative. In Leist v. Auto-Owners Ins. Co., 160 Ind. App. 322, 311 N.E.2d 828 (1974), an uninsured motorist collided with the Jonesboro Town Marshall and injured him. Id. at 324, 311 N.E.2d at 830. The Marshall sought to recover from the Town's uninsured motorist policy, which had a policy limit of $10,000, but the policy provided that limit would be reduced by any worker's compensation received. Id. at 324, 311 N.E.2d at 830. Since the Marshall had received $11,976 in workers' compensation, the insurer argued the policy limit was reduced to zero. Id. at 324–26, 311 N.E.2d at 830–31. Noting that the uninsured motorist statute required a minimum of $10,000 in coverage, the panel rejected the insurer's argument, saying it could "ascertain no basis" for a distinction between the worker's compensation set-off provision in the Town's policy and "other restrictive policy clauses" that Indiana courts had rejected in the past. Id. at 332, 311 N.E.2d at 830–31.

Similarly, in Hardiman v. Govt'l Interins. Exch., 588 N.E.2d 1331 (Ind. Ct. App. 1992), an underinsured motorist injured an employee of the City of Muncie. Id. at 1332. The employee received $25,000 from the tortfeasor's insurer and $58,788.30 in workers' compensation; he sought further recovery from his underinsured motorist policy, which had a $60,000 limit but provided that limit would be reduced by any worker's compensation received. Id. A panel of our Court of Appeals held the employee was not entitled to recover under that policy because the statutory minimum for underinsured motorist coverage at the time of the accident was $25,000, and the employee had already received that amount from the tortfeasor's insurer. Id. at 1334–35.

### 3. The American Family Policy Set-Off Provision

Justice, unlike the employee in Hardiman, did not receive the full statutory minimum from the tortfeasor's insurer; the minimum was $50,000, but Justice received only $25,000. If Wagner had carried the required amount of liability insurance, Justice would have received

$50,000, and the purpose of our uninsured/underinsured motorist statute is to put him in that position.  Thus, in light of that statutory purpose and the holdings of <u>Leist</u> and <u>Hardiman</u>, we conclude Justice is entitled to recover the remaining $25,000 from American Family.  Any policy provision to the contrary is unlawful and unenforceable.

## Conclusion

We therefore reverse the trial court's grant of summary judgment to American Family and remand for further proceedings consistent with this opinion.

Rucker, David, and Rush, JJ., concur.

Dickson, C.J., concurs with Parts B and C but, contrary to Part A, believes that the workers' compensation setoff provision cannot apply to reduce benefits payable under the underinsured motorist policy because the policy expressly excludes coverage of injuries eligible for workers' compensation.